## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| TERRANCE HUGHES and BARBREA YOUNG, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No: |
| v. | Hon. |
| DTE ELECTRIC COMPANY, a Michigan corporation, | Mag. |
| Defendant. | |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, Terrance Hughes and Barbrea Young ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action against Defendant DTE Electric Company ("Defendant"), and state as follows:

### INTRODUCTION

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and common law.

1

2.      According to Defendant's website, "DTE Energy is a Detroit-based diversified energy company involved in the development and management of energy-related businesses and services nationwide."[1]

3.      In order to provide the aforementioned services, Defendant employs hourly (non-exempt) representatives and specialists with a number of job titles, including but not limited to Customer Service Representative, and Customer Service Specialist I and II (hereinafter collectively referred to as "CSR" or "CSRs"). Defendant employs its CSRs in its brick-and-mortar call centers and remotely in Michigan and throughout the United States.  Defendant relies heavily on CSRs to field inbound customer calls and respond to and/or troubleshoot customer inquiries and problems.

4.      Defendant employed Plaintiffs as hourly non-exempt call center employees.

5.      Regardless of the specific job title all CSRs are paid on an hourly basis; are classified as non-exempt employees, use the same timekeeping system(s); use many (if not all) the same computer programs; are subject to the same relevant timekeeping and attendance policies; and have the primary job duty of providing assistance to customers.

---

[1] See https://www.dteenergy.com/us/en/residential/about-dte/about-dte/about-dte.html (last visited Mar. 21, 2024).

2

6.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

7.      One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

8.      The DOL's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails."  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

9.      Defendant does not compensate its CSRs, like Plaintiffs, for all work performed.  Instead, Defendant requires its CSRs to perform compensable work tasks before their scheduled shifts, when they are not logged into Defendant's timekeeping system.  This corporate policy and practice results in CSRs not being paid for all time worked.

---

[2] See https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers

10.     In particular, Defendant required its CSRs to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones.  The CSRs only clocked in and received compensation *after* this pre-shift work was completed, though they were required to perform this work in order to be "ready" when their scheduled shifts began.

11.     Additionally, Defendant required its CSRs to perform off-the-clock work at the end of each shift in connection with performing the following tasks necessary to shut down and log out of the various computer programs and software applications they utilized in performing their job duties.

12.     Defendant through its managers, had actual and constructive knowledge that its CSRs were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact, trained and required, its CSRs to complete this unpaid work.

13.     Defendant's practice of failing to compensate its CSRs for all hours worked violated the CSRs' rights under the FLSA.

14.     The individuals Plaintiffs seek to represent in this action are current and former CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure, and Defendant's violations of law.

15.     Defendant knew or could have easily determined how long it takes its CSRs to complete the pre-shift start-up/log-in and post-shift shutdown/log-out processes and could have properly compensated Plaintiffs and other CSRs for the work that they performed, but did not.

16.     As a result of Defendant's willful failure to compensate Plaintiffs and all similarly situated employees at a rate not less than 1.5 times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant has violated and continues to violate the FLSA, 29 U.S.C. §§201 et seq., including 29 U.S.C. §§ 207(a)(1), 215(a) and 29 C.F.R. §§778.104.  Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

17.     Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> *All current and former hourly CSRs who worked for Defendant at any time during the past three years preceding the filing of this Complaint up through and including judgment.*

18.     Defendant is liable for its failure to pay its CSRs for all work performed and for hours worked in excess of 40 per week.

19.     CSRs who elect to participate in this FLSA collective action seek compensation for all off-the-clock, pre- and post-shift work performed for

Defendant, and for all hours worked in excess of 40 per week at 1.5 times their regular rate of pay, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

20.    This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

21.    Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

22.    Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

23.    This Court has personal jurisdiction over Defendant because it conducts business within the state of Michigan, employs individuals within the state of Michigan, is incorporated in the state of Michigan, and maintains its principal place of business in the state of Michigan.

24.    Venue lies in this District pursuant to 28 U.S.C. § 1391 because

Defendant is subject to personal jurisdiction in this District.

## PARTIES

25.    Plaintiff Terrance Hughes ("Plaintiff Hughes") is a resident of Eastpointe, Michigan. Plaintiff Hughes worked for Defendant as an hourly, non-exempt remote customer service representative from approximately 2020 through November of 2023.  Defendant compensated Plaintiff Hughes through the payment of an hourly rate, most recently at  $20.31 per hour.  Plaintiff Hughes signed a consent form to join this collective action lawsuit, ***Exhibit A***.

26.    Plaintiff Barbrea Young ("Plaintiff Young") is a resident of Detroit, Michigan.  Plaintiff Young worked for Defendant as an hourly, non-exempt customer service specialist from approximately July 2018 through approximately November 2023.  Defendant compensated Plaintiff Young through the payment of an hourly rate, most recently at $22.19 per hour.  Plaintiff Young signed a consent form to join this collective action lawsuit, ***Exhibit B***.

27.    Additional putative Collective members were or are employed by Defendant as hourly employees during the past three years and their consent forms will also be filed in this case.

28.    Defendant, DTE Electric Company, is a Michigan corporation.

29.    Defendant's registered agent for purposes of service is CSC-Lawyers Incorporating Service, 3410 Belle Chase Way, Ste. 600, Lansing, Michigan 48911.

## GENERAL ALLEGATIONS

30. Prior to hiring prospective CSRs, Defendant provided them with a written/verbal offer setting forth the job title, the offered rate of pay, benefits to which they would be entitled, and the conditions of their employment.

31. Defendant maintains documents demonstrating the promised hourly wage for each CSR, including, but not limited to: offer letters, paystubs, and/or payroll records.

32. Plaintiffs and the CSRs received an offer from Defendant to work as CSRs, and they accepted Defendant's respective offers with the understanding that their base hourly rate would be paid for all hours worked.

33. Plaintiffs and the CSRs performed under their respective agreements with Defendant by carrying out their job duties and responsibilities. More specifically, Plaintiff and the CSRs handled customer service inquiries, outages, and problems regarding their payments and billing statements. The aforementioned customer service was provided via inbound calls and Plaintiffs would utilize Defendant's applications and systems to track all events and customer service information. Plaintiffs additionally performed the required unpaid off-the-clock work explained below.

34. Once hired, Defendant provided all CSRs, like Plaintiffs, with, *inter alia*, training on how to carry out their day-to-day job duties, including how to load

and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time in Defendant's timekeeping system; attendance, schedule and call quality expectations; and Defendant's policies related to each topic. The training Defendant's CSRs received was substantially, if not entirely, the same and all CSRs were subject to the same and/or substantially similar policies and quality assurance reviews.

35.   At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and all other CSRs.

36.   In order to perform their job duties, Plaintiffs and Defendant's CSRs required a computer a variety of essential and indispensable computer programs, applications, and servers.

37.   Plaintiffs and all other similarly situated CSRs were instructed to be call-ready the moment their scheduled shift started. This required Defendant's CSRs to be logged into and have loaded all of their essential work-related computer programs and applications prior to the start of their shift so they could be prepared to take calls the moment their shift began.

38.   Additionally, Defendant maintained schedule adherence and attendance metrics pursuant to which it monitored the CSR's clock in times in relation to their start of shift time, as well as the time the CSRs went into a "ready"

status.  Defendant enforced these policies and procedures by routinely evaluating, and at times disciplining, CSRs.  The discipline included, but was not limited to, written warnings, verbal warnings, and termination.

39.    Thus, Defendant forced its CSRs to perform the boot-up and login process before the start of their shift and before they were allowed to clock in.

40.    All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities.    These programs and applications were an integral and indispensable part of the CSRs' work and they could not perform their jobs without them.

41.    Similarly, Defendant's CSRs, including Plaintiffs, performed work off-the-clock at the end of their scheduled shift, after clocking out of Defendant's timekeeping system, when they shut-down/logged out of the programs and applications that they utilized during their shifts.

42.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre- and post-shift work off-the-clock.

43.    The pre- and post-shift off-the-clock time Plaintiffs and all other CSRs spent booting up/logging into and shutting down their computers and applications and programs directly benefitted Defendant and was integral and indispensable to

10

the CSRs' job responsibilities.

44.    As a result of the pre- and post-shift off-the-clock work described herein, Plaintiffs and other CSRs were unlawfully deprived of approximately seven (7) to eighteen (18) minutes of compensation every day.

45.    At all relevant times, Defendant was able to track the amount of time Plaintiffs and other CSRs spent in connection with the pre- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiffs and all other CSRs for the off-the-clock work they performed, thus breaching its contracts with their CSRs.

46.    Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

47.    Despite knowing Plaintiffs and all other CSRs performed this pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

48.    Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiffs and all other CSRs booted up and logged into their computers each day, along with the time they logged into the timekeeping system.

49.    Because Defendant required its CSRs, including Plaintiffs, to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping

system are an inaccurate representation of the total amount of time CSRs spent working for Defendant.  Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

### A. Pre-Shift Off-the-Clock Work

50.    Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other CSRs were required to begin work prior to the start of their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including logging into computer networks, software programs, and applications.  Defendant's CSRs only received compensation after their pre-shift work was completed though they were required to perform this work in order to be fully ready to take calls when their scheduled shifts began.

51.    Plaintiffs and all other CSRs were required to boot-up and log into various computer networks, software programs, and applications, in order to access information necessary to perform their job functions.  However, Plaintiffs and all other CSRs were not actually "clocked in" for their shifts until after the computer boot-up and login process was complete or nearly complete and they placed themselves in "ready" mode.

52.    The off-the-clock pre-shift process took substantial time on a daily basis, approximately five (5) to fifteen (15) minutes per shift.  Specifically, before each shift CSRs had to undertake the following essential work tasks:

a.  Turn on their computer;

b.  Log into Microsoft Windows using a username and password;

c.  Log into customer relationship management software ("CRM") using a username and password;

d.  Open ADP;

e.  Open Microsoft Outlook;

f.  Open and/or log into the learning management system ("LMS");

g.  Open Spark resources;

h.  Open SAP (inventory program);

i.  Open Google;

j.  Open Microsoft Teams;

k.  Open and log into Avaya using username and password; and

l.  Place themselves into "ready" status in Avaya once all programs were up and running.

53.     Defendant's CSRs must complete this process before the start of their scheduled shifts and before fielding calls.  Consequently, the CSRs must arrive at work approximately five (5) to fifteen (15) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

54.     If CSRs started logging in immediately prior to their scheduled shifts, they were in danger of clocking in late because they could not complete the required pre-shift necessary to be "ready" when their scheduled shifts began and it was time

to clock in, and they would therefore receive a tardy on their records and poor schedule adherence scores.

55.    Defendant did not allow its CSRs to clock in a certain amount of time before the start of their shifts (i.e., "Grace Period") to allow for the boot-up and login process.

56.    Because Defendant's CSRs typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

57.    Defendant had express and constructive knowledge that its CSRs began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "ready" and clocked in on time.

58.    Defendant's policies and practices discouraged its CSRs from recording all time worked.

59.    The unpaid off-the-clock work performed prior to each shift by Plaintiffs and all other CSRs is compensable, directly benefitted Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**B. Post-Shift Off-the-Clock Work**

60.    Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs were required to clock out at the end of their scheduled shift or as

14

soon as they were done fielding their last customer inquiry for the day and before closing all work applications and systems to make certain they were clocked-out the moment they stop fielding customer calls.

61.    After they clocked out for the day, CSRs including Plaintiffs, were forced to shut down/log out of the various computer programs and software applications they utilized in performing their job duties.  This resulted in Plaintiffs and other CSRs performing an additional two (2) to three (3) minutes of off-the-clock work every day.

62.    The post-shift off-the-clock work Plaintiffs and other CSRs perform is compensable, directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**C.  The Off-the-Clock Work Results in Viable "Gap Time" Claims**

63.    "There are two types of gap time claims: pure gap time claims – when an employee has not worked more than 40 hours in a workweek and seeks compensation for unpaid hours – and overtime gap time claims – when an employee has worked more than 40 hours in a workweek but nevertheless has not been paid for all of the regular-time hours that she worked at the regular wage rate." *Athan v. United States Steel*, 354 F. Supp. 3d 748, 754 (E.D. Mich. 2019).

64.     Plaintiff, and similarly situated CSRs, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

65.     During the weeks that CSRs do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices were a deprivation of straight-time wages, in breach of Defendant's contracts with its CSRs.

**D. <u>Exemplary Workweek</u>**

66.     Defendant paid its CSRs on a biweekly basis.  The FLSA violations discussed herein occurred throughout Plaintiffs' employment with Defendant; however, as an example of one pay period where Defendant failed to pay Plaintiffs regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff Young provides her paystub for the period of August 15, 2022 – August 28, 2022:

- Plaintiff Young was paid at a rate of $22.19 per hour for her 29.25 regular hours and $33.28 per hour for her 6.00 overtime hours.

- With unpaid pre- and post-shift time, in a range of seven (7) to twenty-eighteen (18) minutes per shift, at ten shifts per pay period, Plaintiff should have been paid an additional seventy (70) to one hundred eighty (180) minutes at her overtime rate of $33.28 during the pay period.

**Exhibit C**, Young Pay Stub.

**E. Defendant Benefitted from the CSRs' Off-the-Clock Work**

67.     At all relevant times, Defendant required and directly benefitted from the off-the-clock work performed by Plaintiffs and all other CSRs in connection with the pre- and post-shift activities described above.

68.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and all other CSRs.

69.     At all relevant times, Defendant has been able to track the amount of time Plaintiffs and all other CSRs spend in connection with the pre- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiffs and all other CSRs for the off-the-clock work they performed.

70.     At all relevant times, Plaintiffs and all other CSRs have been non-exempt hourly employees, subject to the requirements of the FLSA.

71.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and the CSRs in order to pressure them into performing pre- and post-shift work off-the-clock.

72.     Defendant expressly trained and instructed Plaintiffs and all other CSRs to perform these off-the-clock activities when they were not clocked into Defendant's timekeeping system.

73.     Defendant instructed its CSRs to have all work applications and systems fully loaded before the start of their shifts, which takes them in the range of five (5) to fifteen (15) minutes per day, but Defendant prohibited its CSRs from clocking into the timekeeping software and marking themselves as "ready" before the start of the scheduled shift while simultaneously requiring its CSRs to be phone ready the moment their shifts begin.

74.     Additionally, Defendant instructed its CSRs to shut down/log out of all work applications and systems after the end of their shift, which takes them in the range of two (2) to three (3) minutes per day, but Defendant prohibited its CSRs from performing this post-shift work until they had marked themselves as "unavailable" and clocked out of the timekeeping software at the end of the scheduled shift.

75.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and other CSRs of wages owed for the pre- and post-shift activities they performed.

76.     During the weeks that CSRs work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of overtime wages, which are compensable under the FLSA.

77.      Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiffs worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

78.      Defendant has known or should have known that the time spent by Plaintiffs and other CSRs in connection with the pre- and post-shift activities is compensable under the law.  Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith by not compensating the CSRs for the time at issue in this action.

79.      Unpaid wages related to the off-the-clock work described herein are owed to Plaintiffs at the FLSA-mandated overtime premium of one and one-half the Plaintiffs' regular hourly rate because Plaintiffs worked in excess of forty (40) hours in a workweek.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

80.      Pursuant to 29 U.S.C § 216(b), Plaintiffs brings this action on behalf of:

> *All current and former hourly CSRs who worked for Defendant at any time during the past three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective").  Plaintiffs reserve the right to amend this definition if necessary.

81.     Defendant is liable under the FLSA, for *inter alia*, failing to properly compensate Plaintiffs and others similarly situated.

82.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

83.     Consistent with Defendant's policies and practice, Plaintiffs and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

84.     Resolution of this action requires inquiry into common facts.

85.     All of the work Plaintiffs and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work Plaintiffs and the proposed FLSA Collective performed.

86.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

   a.     Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for all regular hours that they worked off-the-clock in non-overtime workweeks;

   b.     Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for all overtime gap time

and premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and

c. Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, have worked for the benefit of Defendant.

87. Defendant is aware, or should have been aware, that federal law required it to pay Plaintiffs and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

88. Defendant's unlawful conduct has been widespread, repeated, and consistent.

89. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

90. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are 1) required to work without

compensation due to uncompensated boot-up and shutdown time; and 2) entitled to their regular hourly wage, overtime gap time in applicable weeks and overtime for hours worked over forty (40) in a week.

91.    Plaintiffs and putative Collective Members are "similarly situated" as that term is used in 29 U.S.C § 216(b) because, among other things, all such individuals were eligible for and did receive the shift differential pay and/or multiple non-overtime rates of pay, but such pay was not properly calculated as part of their regular rate as required by the FLSA.

92.    Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

93.    These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 2119(c); 29 C.F.R. § 516 *et seq*.

94.    Court-authorized notice of this case as a collective action pursuant to 29 U.S.C § 216(b) is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail and/or other means, including email and text message, and allowed to opt in for the purpose of collectively adjudicating

their claims for unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

95.     Upon information and belief, there are hundreds (if not thousands) of similarly situated current and former employees of Defendant who were not paid their required wages and who would benefit from the issuance of court-authorized notice of this lawsuit and the opportunity to join it.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

96.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiffs reserve the right to amend this definition if necessary.

97.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

98.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23

Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

    a.  Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

    b.  Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications, and networks is compensable time under applicable law;

    c.  Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

    d.  Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

99.   Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

100.   Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiffs retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor

their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

101. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

102. This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

103. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

104. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

105.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

106.   At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

107.   At all times relevant to this action, Defendant was engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

108.   At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

109.   At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

110.   Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

111.   Plaintiffs either: 1) engaged in commerce; 2) engaged in the production of goods for commerce; or 3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

112.   The FLSA requires an employer to pay employees for all hours worked at the federally mandated overtime premium rate of 1.5 times their regular rate of

pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

113.   The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

114.   At all relevant times to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiffs and all the proposed FLSA Collective members to perform pre- and post-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

115.   The off-the-clock work performed every shift by Plaintiffs and the proposed FLSA Collective was an essential part of their jobs and these activities, and the time associated with these activities was not *de minimis*.

116.   As a result of Defendant's willful failure to compensate Plaintiffs and the putative collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including but not

limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

117. As a result of Defendant's unlawful policies and practices, Plaintiffs and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

118. Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiffs and the proposed FLSA Collective members for all work activities, but did not.

119. As a result of the foregoing, Plaintiffs were injured and seek appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances. 29 U.S.C. § 216(b).

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE BREACH OF CONTRACT**

120. Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

121. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay

each employee for they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on behalf of Defendant.

122. Evidence of these contracts includes Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiffs accepted and performed, but Defendant failed to perform by paying Plaintiffs and the Rule 23 Class the promised wages.

123. For example, Defendant offered to compensate Plaintiff Young at a minimum of $22.19 per hour if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties as a CSR in reliance on the offer.

124. Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed-upon hourly rate for *all* of the hours worked.

125. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, were contractually entitled to a minimum hourly rate of approximately $22.19 per hour within the applicable period.

126. Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters

and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

127. By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

128. Defendant can easily ascertain the amount of damages owed to Plaintiffs and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

129. Plaintiffs and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims).

130. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent

performing off-the-clock activities, which is a fundamental part of an "employer's job."

131.   As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE UNJUST ENRICHMENT**

132.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

133.   This Count is pled in the alternative to Count II, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

134.   At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

135.   Plaintiffs and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

136.   By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

137.   Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

138.   Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

139.   Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

140.   Plaintiffs and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

141.   As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request the following relief:

a.   An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims

set forth herein (Count I);

b.      An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract claim (Count II);

c.      An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' unjust enrichment claim (Count III);

d.      An Order compelling Defendant to disclose in computer format, or in print if no computer-readable format is available, the names, addresses, and e-mails of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class and collective members of their rights by law to join and participate in this lawsuit;

e.      An Order designating Plaintiffs as representatives of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f.      An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.      An Order declaring Defendant's violations of the FLSA were willful;

h.      An Order declaring Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regular hourly rate;

i.      An Order declaring Defendant was unjustly enriched by the off-the-clock work performed by Plaintiffs and the members of the Rule 23 Nationwide Class;

j.      An Order granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages

available by law;

k.    An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

l.    An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

m.    An Order awarding such other and further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Date: April 23, 2024          Respectfully submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
Kathryn E. Milz (IL 6297213)
**SOMMERS SCHWARTZ, P.C.**
One Town Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
kstoops@sommerspc.com
kmilz@sommerspc.com

Jesse L. Young (P72614)
**SOMMERS SCHWARTZ, P.C.**
141 E. Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
(269) 250-7500
jyoung@sommerspc.com

*Attorneys for Plaintiffs and the Proposed Collective*